UNITED STATES of America,
Plaintiffs,

v.

Richard V. SECORD, Defendant.

Civ. A. Nos. 88–0080–03, 89–0110.

United States District Court,
District of Columbia.

Sept. 29, 1989.

Reid Weingarten, Independent Counsel, Washington, D.C., for plaintiffs.

Thomas C. Green, James Sharpe, Washington, D.C., for defendant.

## MEMORANDUM

AUBREY E. ROBINSON, Jr., Chief Judge.

Re: *Defendant's Motion No. 10 to Dismiss the New Indictment for Lack of Prosecutorial Jurisdiction*

In his Pretrial Motion No. 10, Defendant Secord asks the Court to dismiss Counts 1–9 of the second indictment.[1] Each of these counts arises out of Secord's appearance in May and June of 1987 before the Select Congressional Joint Committee investigating the series of events known as the Iran–Contra affair. Secord argues that the investigation and prosecution of these counts fell outside the jurisdiction granted to the Independent Counsel by the Special Division of the Court of Appeals which appointed him.[2] The Court disagrees, and for the reasons below, denies Defendant's motion.

## I. BACKGROUND

In his papers and at oral argument, Defendant has essentially argued that the Special Division Order ("the Order") outlining the jurisdiction of the Independent Counsel limited his prosecutorial power to offenses committed *up to* his appointment, and to those "arising from or connected with" the Independent Counsel's investigation (which, in Defendant's view, excludes the Congressional investigation). According to Defendant, because the Independent Counsel failed to employ the specific provi-

---

1. On March 16, 1988, Secord was indicted along with three others. Six counts of the 23 count indictment charged Secord with the following: (1) conspiracy; (3) theft of government property; (2) wire fraud; (17) conspiracy to pay illegal gratuities; (18) offer of an illegal gratuity; and (19) payment of an illegal gratuity. On April 7, 1989, Secord was indicted on an additional nine counts individually, for (1) obstruction of Con-

gress; (2–8) perjury; and (9) false statements. The Independent Counsel then moved to consolidate the indictments, and on June 8, 1989, this Court granted the motion. The Independent Counsel has since dismissed Counts one, two and three of the original indictment.

2. *See* 28 U.S.C. § 49 (Supp.1989).

sions of the Ethics in Government Act, 28 U.S.C. §§ 49, 591–599 (Supp.1989) ("the Act"), allowing an expansion of his jurisdiction, the second indictment must fail.

The Independent Counsel responds that the wording of the Order easily supports the second indictment. He points out that the Order authorized the Independent Counsel to investigate

> to the maximum extent authorized by [the Act] whether any person ... acting in concert with Lt. Col. North ... has committed a violation of *any federal criminal law ... relating in any way to*

the financing and sale of arms to Iran, or any intermediaries, the diversion of proceeds, and the provision of support for the Contras.[3] *See id.* at 1–2, *cited in* Gov't Opp. at 6 (emphasis the Gov't's). The Independent Counsel also cites most prominently the following clause:

> [T]he Independent Counsel shall have jurisdiction ... to seek indictments and to prosecute *any persons* or entities *involved in any of the foregoing events* or transactions [the sale of weapons to Iran and the diversion of proceeds] who are reasonably believed to have committed a violation of *any federal criminal law ... arising out of such events ....*

Appointment Order at 2, *cited in* Gov't Opp. at 5 (emphasis the Gov't's).

In addition, the ·Government argues that the congressional investigation was in fact "connected with or arising out of" the in-

vestigation by the Independent Counsel, thus coming under other language in paragraphs two and three of the Order.[4]

## II.  DISCUSSION

The resolution of this question turns upon the construction the Court is willing to place upon the phrases "arising out of" and "related to." First, it must be ascertained whether the language of the Order itself permits the Independent Counsel to prosecute Defendant's alleged perjury before Congress. If so, then it remains only to determine whether the provisions of the Act permit the Division's broad grant of residual jurisdiction.

### A.  *The Language of the Order*

Defendant is correct that the Order's most explicit reference to future crimes, including perjury, requires that the future offense be "connected with" or "arise out of" the Independent Counsel's investigation. This issue is dealt with further below. The Court believes the better focus is upon the second clause of the Order's paragraph 2, and the "relating in any way to" language of paragraph 1, both quoted above. The question posed by that language is simply as follows: Did General Secord's alleged perjury "relate[ ] in any way to" or "aris[e] out of" the *events* specified in the Order. *See supra*, note 3.

Clearly, the answer is "yes." It cannot be denied that the congressional investigation itself "arose from" the events consti-

---

**3.** The Order specified the events to be investigated as follows:

(1) the direct or indirect sale, shipment, or transfer since in or about 1984 down to the present, of military arms, material, or funds to the Government of Iran, officials of that government, persons, organizations or entities connected with or purporting to represent that government, or persons located in Iran;

(2) the direct or indirect sale, shipment, or transfer of military arms, material or funds to any government, entity, or person acting, or purporting to act as an intermediary in any transaction above referred to in section (1);

(3) the financing or funding of any direct or indirect sale, shipment or transfer referred to in section (1) or (2);

(4) the diversion of proceeds from any transaction described in section (1) or (2) to

or for any person, organization, foreign government, or any faction or body of insurgents in any foreign country, including but not limited to Nicaragua;

(5) the provision or coordinated support for persons or entities engaged as military insurgents in armed conflict with the government of Nicaragua since 1984

. . . . .

Appointment Order at 2.

**4.** *E.g.*, Special Division Order, ¶ 2 ("[T]he Independent Counsel shall have jurisdiction and authority to investigate other allegations or evidence of violation of any federal criminal law ... developed during the Independent Counsel's investigation ... and *connected with or arising out of that investigation*") (emphasis added).

tuting the Iran–Contra initiative. General Secord was repeatedly questioned in a detailed manner about those events. He is alleged to have lied about those events. In fact, Defendant's alleged perjury "arose from" the events in two ways: first, the entire process in Congress sprang directly from the Iran–Contra initiative; second, Defendant's alleged perjury could well be construed as part of a continuing effort to conceal the extent and detail of the "enterprise," which was the linchpin of the original indictment.[5] As such, in the view of the Independent Counsel, Defendant's actions before Congress may simply have been one additional aspect of the "events."

The Independent Counsel also argues that Congress' investigation, and Defendant's alleged perjury were somehow "connected with" or "arose out of" the Independent Counsel investigation. The efforts of Congress, however, had little to do with the Independent Counsel or its investigation. A large segment of the office Independent Counsel had to isolate itself from most of the witnesses' testimony. The whole process before Congress substantially interfered with the Independent Counsel's original case against the Defendants.

The Court concludes that the link between Congress' and the Independent Counsel's investigations is too remote to justify prosecutorial jurisdiction under the language of the Order. Because, however, Secord's alleged perjury before Congress, "arose from" and was "related to" the subject matter of the Independent Counsel's jurisdiction, the "events," the Court finds that the Order supports the second indictment.

### B. *The Ethics in Government Act*

Having determined that the "arising out of" and "related to" language of the Order supports jurisdiction over Defendant's alleged perjury before Congress, the question remains whether the Special Division was justified under the Act in conferring such jurisdiction. Defendant is absolutely correct that the Act provides specific means for an Independent Counsel to expand its jurisdiction through the Attorney General or the Special Division. *See* 28 U.S.C. §§ 593(c), 594(e) (Supp.1989). The issue, however, is simply whether the *initial* grant of prosecutorial jurisdiction correctly reaches the conduct. The Court finds that it does.

Section 593(b)(3), Title 28 of the U.S.Code sets out the standard the Division must follow in defining the scope of the Independent Counsel's jurisdiction. Under that section, the Division

> shall assure that the Independent Counsel has adequate authority to fully investigate and prosecute the subject matter with respect to which the Attorney General has requested the appointment of the Independent Counsel, *and all matters related to that subject matter.*

28 U.S.C. § 593(b)(3) (Supp.1989) (emphasis added).

The discussion of this provision in the Act's legislative history is not particularly extensive. It was added in 1987 to "clarif[y] current law by stating expressly" that the Independent Counsel should be able to reach, *inter alia,* "all related matters," H.R. Conf. Rep. No. 452, 100th Cong., 1st Sess. 27 (1987), *reprinted in* 1987 U.S.Code Cong. & Admin. News 2185, 2193, a phrase which "simply reflects the customary practice of the special court in establishing the jurisdiction of former and current Independent Counsels." *Id.* at 28, 1987 U.S.Code Cong. & Admin. News at 2194. Aside from this statement, the legislative history to the provision does not define "related" or provide examples of its purpose.

---

**5.** It is important to note that the Congress played a central role throughout these events. The need for the investigation sought by the Attorney General in this matter arose to a large extent due to the perceived circumvention by Defendants of the political, indeed constitutional, process. The Independent Counsel's charges in the original indictment reflect this theme. *See* Indictment of March 16, 1988 (charging Obstruction of Congress; False Statements; Falsification, Destruction and Removal of Documents). The target of this alleged effort to obfuscate and conceal was primarily the Congress. In this light, the investigation and prosecution by the Independent Counsel of what clearly appears to be the continuation of that effort by Defendant Secord seems entirely reasonable.

According to one Senator and member of the Senate Governmental Affairs Committee, the amended section 593(b)(3) "does not enlarge the authority of the court." Instead,

> the committee believes that this implied authority has always existed. But it is important that Congress be on record as explicitly recognizing not only the authority but also the responsibility of the court to craft the jurisdiction of an Independent Counsel so that it is appropriate to the charges to be investigated.

133 Cong. Rec. S15622 (daily ed. Nov. 3, 1987).[6]

Finally, a passage from the legislative history of section 593(c) indicates that an Independent Counsel is entitled to look first to the language of the original jurisdictional Order upon encountering a seemingly "related matter:"

> Thus, when an Independent Counsel is confronted with new information about a criminal allegation involving a covered individual, *depending upon the extent to which the matter may or may not fall within the Independent Counsel's original grant of jurisdiction*, he or she must follow [the formal procedures for receiving expanded jurisdiction through the Attorney General].

H.R. Conf. Rep. No. 452, *supra*, at 29, 1987 U.S.Code Cong. & Admin. News at 2195 (emphasis added). The circumstances requiring the Independent Counsel to employ the jurisdictional expansion procedures, as opposed to relying on his original grant, are distinct. If the new matter is "related to the Independent Counsel's *prosecutorial jurisdiction*," he must ask the Attorney General or the Special Division to refer it to him formally. *See* 28 U.S.C. § 594(e) (Supp.1989). If, however, the new matter is "related to [the] *subject matter* " of the Attorney General's original request for appointment, he may proceed on his own. *See id.* § 593(b)(3).

Here, the propriety of the Special Division Order, and the Independent Counsel's

prosecution of the second indictment, depends upon whether Defendant's alleged perjury truly "relates to [the] subject matter" of the Attorney General Meese's request. In *Morrison v. Olson,* —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), the Supreme Court supplied somewhat of a gloss on the statutory language as it upheld the Act as consistent with the Constitution:

> [W]e do not think that Congress may give the Division *unlimited* discretion to determine the Independent Counsel's jurisdiction. In order for the Division's definition of the counsel's jurisdiction to be truly "incidental" to its power to appoint, the jurisdiction that the court decides upon must be *demonstrably related to the factual circumstances that gave rise to the Attorney General's investigation* and request for the appointment of the Independent Counsel in the particular case.

*Id.* 108 S.Ct. at 2613 (first emphasis in original, second emphasis added).

In permitting the Independent Counsel to prosecute crimes "arising out of" the Iran–Contra events, here Defendant's alleged perjury, the Special Division fell well within the standard of section 593(b)(3), as clarified by the Court. Just as Defendant's conduct "arose out of" the sale of arms to Iran and the diversion of proceeds, it is "demonstrably related" thereto. To demonstrate that one occurrence is "related" to another, one need only show that there is a reasonable causal or logical connection between the two, some tenable correlation between events.

That connection is present here. The congressional investigation, the questions directed at Defendant and Defendant's answers all bear an undeniable factual relationship to the events giving rise to the appointment of the Independent Counsel. This relationship is strengthened by the congressional investigation's temporal and logical connection to the events, *see* discussion *supra*, at 564–65. Once again, the

---

**6.** The Senate Governmental Affairs Committee in 1987 was correct that the Special Division always possessed the authority to extend the independent counsel's jurisdiction to "related

matters." The original Act's legislative history expressly so stated. *See* S.Rep. No. 170, 95th Cong., 2d Sess. 64, *reprinted in* 1978 U.S.Code Cong. & Admin. News 4216, 4280.

Independent Counsel could reasonably view the actions of General Secord as simply an additional part, another component of the crimes for which he and three others were originally indicted.

By supplying the example of Defendant's future copyright violation in writing his Iran–Contra memoirs, Defendant argues that even the most attenuated factual relationship would permit a prosecution. Precisely the opposite, however, is true. The Supreme Court in *Morrison* called for more than a relationship between events which is stretched far over time and factually suspect. The relationship must be "demonstrable," that is, something which is evident initially and without great leaps of logic. The courts are routinely called upon to draw lines, and this simply is another of those cases.

## III. CONCLUSION

Both the wording of the Special Division's Order, and the statutory authority underlying it support the Independent Counsel's prosecutorial jurisdiction over matters "arising out of" and "related to" the events making up the Iran-Contra initiative. Because General Secord's testimony before Congress bears a "demonstrable relationship" with those events, the Court holds that the Independent Counsel possessed the jurisdiction to prosecute for perjury and obstruction, and denies Defendant's Pretrial Motion No. 10.